RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
MATTHEW HOFFMAN, SBN 227351
  mhoffman@gibsondunn.com
RYAN S. APPLEBY, SBN 293008
  rappleby@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

Attorney for Defendant LEXINGTON INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENOMINEE INDIAN TRIBE OF WISCONSIN, MENOMINEE INDIAN GAMING AUTHORITY d/b/a MENOMINEE CASINO RESORT, and WOLF RIVER DEVELOPMENT COMPANY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>(1) LEXINGTON INSURANCE COMPANY;<br>(2) UNDERWRITERS AT LLOYD'S – SYNDICATES: ASC 1414, XLC 2003, TAL 1183, MSP 318, ATL1861, KLN 510, AGR 3268;<br>(3) UNDERWRITERS AT LLOYD'S – SYNDICATE: CNP 4444;<br>(4) UNDERWRITERS AT LLOYD'S – ASPEN SPECIALTY INSURANCE COMPANY;<br>(5) UNDERWRITERS AT LLOYD'S – SYNDICATES: KLN 0510, ATL 1861, ASC 1414, QBE 1886, MSP 0318, APL 1969, CHN 2015, XLC 2003;<br>(6) UNDERWRITERS AT LLOYD'S – SYNDICATE: BRT 2987;<br>(7) UNDERWRITERS AT LLOYD'S – SYNDICATES: KLN 0510, TMK 1880, BRT 2987, BRT 2988, CNP 4444, ATL 1861, NEON WORLDWIDE PROPERTY CONSORTIUM, AUW 0609, TAL 1183, AUL 1274;<br>(8) HOMELAND INSURANCE COMPANY OF  NEW YORK; | CASE NO. 4:21-cv-00231<br><br>**NOTICE OF REMOVAL BY DEFENDANT LEXINGTON INSURANCE COMPANY**<br><br>[Removal from the Superior Court of the State of California, Alameda County, Case No. RG20080933] |

(9) HALLMARK SPECIALTY
    INSURANCE COMPANY;
(10) ENDURANCE WORLDWIDE
    INSURANCE LTD T/AS SOMPO
    INTERNATIONAL;
(11) ARCH SPECIALTY INSURANCE
    COMPANY;
(12) EVANSTON INSURANCE COMPANY;
(13) ALLIED WORLD NATIONAL
    ASSURANCE COMPANY;
(14) LIBERTY MUTUAL FIRE
    INSURANCE COMPANY;
(15) LANDMARK AMERICAN
    INSURANCE COMPANY; and
(16) SRU DOE INSURERS 1-20,

                Defendants.

**TO THE CLERK OF THE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Lexington Insurance Company ("Lexington" or "Defendant") respectfully removes the above-captioned matter from the Superior Court of California, County of Alameda, where it is pending as Case No. RG20080933, to the United States District Court for the Northern District of California.

This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because there is minimal diversity of citizenship between the parties, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and the proposed class consists of 100 or more members. Removal is proper for the reasons set forth below.

## I. BACKGROUND

1. Plaintiffs Menominee Indian Tribe of Wisconsin (the "Menominee Tribe"), Menominee Indian Gaming Authority d/b/a Menominee Casino Resort ("MCR"), and Wolf River Development Company ("Wolf River") (collectively, "Plaintiffs") filed a Class Action Complaint on November 12, 2020, in the Superior Court of the State of California for Alameda County, which is within the district and division to which this case is removed. Plaintiffs filed the Complaint individually and on behalf of a "nationwide class of insureds under the Tribal First Tribal Property Insurance Program" (collectively, the "Class"), against Lexington and other insurers. As required under 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Lexington in the underlying state court action are attached as exhibits to the accompanying declaration.

2. The Menominee Tribe "is a federally recognized Indian Tribal Entity located in Keshena, Wisconsin, composed of more than 9,000 enrolled members." Compl. ¶¶ 1, 26.

3. MCR "holds a business Charter from the Tribal Government of the Menominee Tribe and was formed for the purpose of conducting the gaming and gaming related operations of the Menominee Tribe" on the Menominee Tribe's reservation in Keshena, Wisconsin. *Id.* ¶¶ 1, 5, 27. According to the MCR Charter, MCR "enjoys an autonomous existence," is managed by a Board of Directors, and complies with various reporting requirements and fiscal practices. *See* Menominee

Tribal Code, Chapter 660, Art. II, Menominee Indian Gaming Auth., available at https://www.ecode360.com/13574083.

4. Wolf River "holds a Charter from the Tribal Government of the Menominee Tribe as a tribal business and was formed for the purpose of conducting the nongaming commercial activity of the Menominee Tribe" on the Menominee Tribe's reservation in Keshena, Wisconsin. Compl. ¶¶ 1, 28. According to the Wolf River Charter, Wolf River is managed by a Board of Directors and complies with various reporting requirements and fiscal practices. *See* Menominee Tribal Code, Chapter 740, Wolf River Dev. Co., available at https://www.ecode360.com/12129090.

5. Plaintiffs allege that for the policy period from July 1, 2019 to July 1, 2020, they and members of the proposed Class "purchased insurance coverage in the Tribal Property Insurance Program" ("TPIP") maintained by Alliant Underwriting Services, Inc. ("Alliant") and Alliant's "specialized program," Tribal First. Compl. ¶¶ 9–10. TPIP "is comprised of insurance policies from more than a dozen insurance carriers," including Lexington, and each of the policies issued to Plaintiffs and members of the proposed Class contain a master policy form identified as TPIP USA Form No. 15 (the "Policy"). *Id.* ¶¶ 10, 29–45.

6. Plaintiffs claim the Policy provides insurance against "all risk of direct physical loss or damage occurring during the period of this Policy" to covered property, subject to the "terms, conditions and exclusions" contained in the Policy. *Id.* ¶¶ 46–47, 53. Plaintiffs allege their "covered property" includes "Menominee Tribal property, such as the casino, hotel, restaurant, healthcare and other property at MCR, Thunderbird and the Clinic." *Id.* ¶ 45; *see also id.* ¶ 6 (Thunderbird is owned and operated by Plaintiffs and "is a modern facility including a mini casino with slot machines, the Thunderbird restaurant, and a full bar, as well as a venue for seasonal outdoor entertainment"); *id.* ¶ 7 (the Clinic is owned and operated by the Menominee Tribe and "provides healthcare to the Menominee community"). Plaintiffs further allege that the Policy includes coverage for "Business Interruption," "Extra Expense," "Ingress/Egress," "Civil Authority," "Contingent Time Element," and "Tax Revenue Interruption" coverages. *Id.* ¶¶ 61, 68–70, 72–73. For Business Interruption and Extra Expense coverages, the "period of restoration during which . . . losses accrue begins 'on the date direct physical loss occurs and interrupts normal business operations and ends on the date that

the damaged property should have been repaired, rebuilt or replaced with due diligence and dispatch, but not limited by the expiration of this policy.'" *Id.* ¶¶ 64, 68.

7. Plaintiffs allege that, in response to the COVID-19 pandemic, "local, state and Tribal governments throughout the United States," including the State of Wisconsin and the Menominee Tribal Legislature, issued a series of "Closure Orders" that suspended non-essential businesses and required individuals "to stay at home or in their place of residence," causing Plaintiffs' businesses to close and lose revenue. *See id.* ¶¶ 83–101. Plaintiffs allege that "[a]s a result of the presence of COVID-19 and the Closure Orders," they and the members of the proposed Class suffered losses covered by the Policy. *Id.* ¶ 106.

8. The Complaint seeks, among other relief, payment for "losses incurred and to be incurred by the Class related to COVID-19, the Closure Orders and the interruption of their businesses stemming from the COVID-19 pandemic," along with "pre- and post-judgment interest on any amounts awarded," "attorneys' fees and costs of suit," and "multiple damages where required under state law." *Id.*, Request for Relief, subds. (d)(ii), (e)–(g).

9. Lexington was served with the Summons and Complaint no earlier than December 11, 2020. The Summons and Complaint were received as attachments to a letter dated December 11, 2020, which bore a notation suggesting it was hand delivered to "FLWA Service Corp. c/o Foley and Lardner LLP, 555 California Street, Suite 1700, San Francisco, CA 94104-1520," the entity and address upon which service of suit may be made under the Policy. Thus, this Notice is timely filed under 28 U.S.C. § 1446(b). *See* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1).

10. Upon filing this Notice of Removal, Lexington will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Alameda County Superior Court, pursuant to 28 U.S.C. § 1446(d).

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005

11. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Lexington pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

12. CAFA pertains to "any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under a state statute, California Code of Civil Procedure § 382, which authorizes an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Compl. ¶ 108.

**A.     The Proposed Class Consists of 100 Members or More**

13. CAFA applies when a proposed class consists of 100 members or more. 28 U.S.C. § 1332(d)(5)(B). This requirement is met here. Plaintiffs allege in the Complaint that this action is brought "individually and on behalf of all others similarly situated," and Plaintiffs seek to represent a "nationwide Class defined as all persons and entities insured under the Policy with claims due to COVID-19 and/or closure orders from the relevant authorities." Compl. ¶¶ 108–09. Lexington, through Alliant and Tribal First, provides insurance coverage under the Policy to over 400 tribes, tribal corporations, and other tribal entities in the United States for the policy period from July 1, 2010, to July 1, 2020. Given the widespread proliferation of the COVID-19 virus and the resultant closure orders "issued by local, state and Tribal governments" throughout the country (*see, e.g.*, *id.* ¶¶ 99–100), the proposed class exceeds the 100-member minimum.

**B.     There Is Minimal Diversity Between Plaintiffs and Lexington**

14. CAFA requires minimal diversity of citizenship among the parties. Specifically, "any member of [the] class of plaintiffs" must be "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014). This requirement is met.

15. For purposes of diversity jurisdiction, a corporation organized under tribal law should be analyzed "as if it were a state or federal corporation." *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 723 (9th Cir. 2008). Because a corporation is considered a citizen of the state in which it was incorporated and the state where it has its principal place of business, 28 U.S.C. § 1332(c), a corporation organized under tribal law is deemed "a citizen of the state where it has its principal place of business." *Cook*, 548 F.3d at 723.

16. MCR is a tribal corporation that conducts "gaming and gaming related operations of the Menominee Tribe on the reservation," which is located in Keshena, Wisconsin. *See* Compl. ¶¶ 1, 5, 27. Accordingly, for purposes of diversity jurisdiction, MCR is headquartered and maintains its principal place of business in Wisconsin. 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 78–79 (2010) (holding that for diversity jurisdiction purposes, a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities."). MCR is therefore a citizen of Wisconsin. *See Cook*, 548 F.3d at 723–24 (concluding that tribal corporation was "a citizen of Nevada" for diversity jurisdiction purposes, because Nevada was "the location of its principal place of business").

17. Wolf River is a tribal corporation that conducts the nongaming commercial activity of the Menominee Tribe "on the reservation," which is located in Keshena, Wisconsin. *See* Compl. ¶¶ 1, 28. Accordingly, Wolf River is headquartered and maintains its principal place of business in Wisconsin and is a citizen of Wisconsin for diversity jurisdiction purposes. 28 U.S.C. § 1332(c)(1); *see also Hertz Corp.*, 559 U.S. at 78–79; *Cook*, 548 F.3d at 723–24.

18. Lexington is incorporated in the State of Delaware and has its principal place of business in Boston, Massachusetts. Compl. ¶ 20. Lexington is therefore a citizen of Delaware and Massachusetts for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).[1]

19. The fact that one of the Plaintiffs, the Menominee Tribe, is a federally recognized Indian Tribal Entity, does not impact federal jurisdiction under CAFA. Because at least one Plaintiff is a citizen of a state different from at least one Defendant, the minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A); *see also Ponca Tribe of Indians of Okla. v. Cont'l Carbon*

---

[1] In addition to Defendant Lexington, several other insurance companies headquartered and with principal places of business in various parts of the country and world are named as Defendants. Compl. ¶ 37 (Hallmark Specialty Insurance Company incorporated in Oklahoma with principal place of business in Dallas, Texas); *id.* ¶ 39 (Arch Specialty Insurance Company incorporated in Missouri with principal place of business in Jersey City, New Jersey); *id.* ¶ 40 (Evanston Insurance Company incorporated and with principal place of business in Illinois); *id.* ¶ 41 (Allied World National Assurance Company incorporated in New Hampshire with principal place of business in New York, New York); *id.* ¶ 42 (Liberty Mutual Fire Insurance Company incorporated and with principal place of business in Massachusetts); *id.* ¶ 43 (Landmark American Insurance Company incorporated in New Hampshire with principal place of business in Atlanta, Georgia); *id.* ¶¶ 30–35, 38 (several other Defendants organized under the laws of the United Kingdom or England with principal places of business in England).

*Co.*, 439 F. Supp. 2d 1171, 1177–78 (W.D. Okla. 2006) (finding that presence of a Tribal plaintiff did not bar federal jurisdiction under CAFA because minimal diversity existed between the defendant and "at least one of the Class Plaintiffs").  By way of example only, for diversity purposes, Plaintiff Wolf River is a citizen of Wisconsin and Defendant Lexington is a citizen of Delaware and Massachusetts.

**C.     The Amount in Controversy by the Class Claims Exceeds $5 Million**

20.     Under CAFA, diversity jurisdiction requires that the aggregate amount in controversy "exceeds the sum or value of $5,000,000."  28 U.S.C. § 1332(d)(2), (6).  This requirement is met.  When a complaint seeks damages but does not state a specific amount, a notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  If the amount is contested, a court will determine whether the threshold is met by a preponderance of the evidence.  *Id.* at 553; *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018).

21.     Here, the Complaint seeks various forms of relief and attorneys' fees, but does not include a specific demand for damages or otherwise specify the amount in controversy.  On a full and fair reading of the Complaint, however, the amount in controversy exceeds $5 million.

22.     <u>First</u>, the Complaint alleges that "Plaintiffs suffered a loss of business income occasioned directly by the presence of COVID-19 and the resulting inability or lessened ability to use" covered premises.  Compl. ¶ 15.  Plaintiffs also allege that these losses are covered under the Policy issued by Lexington, *id.* ¶¶ 12–18, 106, and seek this relief on behalf of themselves and a proposed Class of at least 100 members.  Plaintiffs and the proposed Class members operate casinos, resorts, hotels, restaurants, and other high-revenue gaming and commercial enterprises across the country.  *See id.* ¶ 4 ("The National Indian Gaming Commission found that Indian gaming revenue totaled $33.7 billion in fiscal year 2018, generated from 501 gaming operations run by 241 federally recognized tribes across 29 states.").  Based on information provided by Plaintiffs and the members of the proposed Class to Lexington through Alliant and Tribal First in connection with the Policy's issuance and/or renewal and regarding the value of covered property and businesses, the amount in controversy exceeds $5 million.  Indeed, Policy No. 017471589/06 (Dec 17) 9131, just one of several

Gibson, Dunn & Crutcher LLP

policies issued to the Menominee Tribe, provides up to $31,250,000 of coverage for "Combined Business Interruption and Rental Income," as specified in the Evidence of Coverage attached to the Complaint.

23. <u>Second</u>, Plaintiffs request payment of losses "incurred and *to be incurred*" by the Class in relation to COVID-19, closure orders, and the interruption of their businesses as a result thereof. *Id.*, Request for Relief, subd. (d)(ii) (emphasis added). Plaintiffs further seek declaratory judgment that "losses incurred in connection with the Closure Orders and the interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policy." *Id.*, Request for Relief, subd. (d)(i). Thus, future losses alleged to be potentially covered under the Policy are at issue for not only Plaintiffs but also for at least 100 proposed Class members. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (where plaintiff alleges "future [losses]," it is appropriate to include all potential future losses in the amount in controversy); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (defendant may make "reasonable assumptions" in demonstrating amount in controversy (quotation marks and citation omitted)).

24. <u>Third</u>, Plaintiffs' request for attorneys' fees places additional money in controversy.

### III. CONCLUSION

25. For the foregoing reasons, Lexington respectfully states that this action, previously pending in the Superior Court of the State of California for the County of Alameda, is properly removed to this Court, and Lexington respectfully requests that this Court proceed as if this case had been originally filed in this Court.

Dated: January 11, 2021          GIBSON, DUNN & CRUTCHER LLP

                                 By:  */s/ Richard J. Doren*
                                      Richard J. Doren

                                 Attorneys for Defendant LEXINGTON INSURANCE COMPANY