Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

MENOMINEE INDIAN TRIBE OF    )
WISCONSIN, et al.,           )
                             )
          Plaintiffs,        )
                             )
  VS.                        )    NO. C 21-00231 WHO
                             )
LEXINGTON INSURANCE COMPANY, )
et al.,                      )
                             )
          Defendants.        )
_____)
                        San Francisco, California
                        Wednesday, June 16, 2021

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiffs:

                    ANDRUS ANDERSON LLP
                    155 Montgomery Street - Suite 900
                    San Francisco, California  94104
               BY:  **JENNIE L. ANDERSON, ATTORNEY AT LAW**

                    BURNS BOWEN BAIR LLP
                    One South Pinckney Street - Suite 930
                    Madison, Wisconsin  53703
               BY:  **BRIAN P. CAWLEY, ATTORNEY AT LAW**
                    **TIMOTHY W. BURNS, ATTORNEY AT LAW**

                    MUNGER TOLLES & OLSON
                    355 South Grand Avenue - 35th Floor
                    Los Angeles, California  90071
               BY:  **JEFF J. BOWEN, ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

1   **APPEARANCES:**   (cont'd, via videoconferencing)

2   For Plaintiffs:

3                           DiCELLO LEVITT GUTZLER LLC
                            7556 Mento Avenue
4                           Mentor, Ohio  44060
                    BY:  **KENNETH P. ABBARNO, ATTORNEY AT LAW**
5
    For Defendant Lexington Insurance Company:
6
                            GIBSON, DUNN & CRUTCHER LLP
7                           333 South Grand Avenue
                            Los Angeles, California  90017
8                   BY:  **RICHARD J. DOREN, ATTORNEY AT LAW**

9   For Defendants Liberty Mutual Fire Insurance Co., Arch
    Specialty Insurance Co., Landmark American Insurance Co., XL
10  Catlin Insurance Co. UK Ltd.; Homeland Insurance Company of New
    York, Endurance Worldwide Insurance Ltd., Underwriters at
11  Lloyd's:

12                          ZELLE LLP
                            500 Washington Avenue South - Suite 4000
13                          Minneapolis, Minnesota  55415
                    BY:  **NICHOLAS DOLEJSI, ATTORNEY AT LAW**
14
                            ZELLE LLP
15                          555 12th Street - Suite 1230
                            Oakland, California  94607
16                  BY:  **QIANWEI FU, ATTORNEY AT LAW**

17                          ZELLE LLP
                            901 Main Street - Suite 4000
18                          Dallas, Texas  75202
                    BY:  **SHANNON O'MALLEY, ATTORNEY AT LAW**
19
    For Defendant Hallmark and Aspen Specialty Insurance Company:
20
                            LEWIS BRISBOIS BISGAARD & SMITH, LLP
21                          333 Bush Street - Suite 1100
                            San Francisco, California  94104
22                  BY:  **WILLIAM E. BLUMHARDT, ATTORNEY AT LAW**

23  For Defendant Evanston Insurance Company:

24                          DICKINSON WRIGHT PLLC
                            1850 N. Central Avenue - Suite 1400
25                          Phoenix, Arizona  85004
                    BY:  **P. BRUCE CONVERSE, ATTORNEY AT LAW**

1    <u>**Wednesday - June 16, 2021**</u>                    <u>**2:16 p.m.**</u>

2                         **P R O C E E D I N G S**

3                              ---oOo---

4         **THE CLERK:**  This is Case Number 21-231, Menominee

5    Indian Tribe of Wisconsin versus Lexington Insurance Company.

6        Counsel, if you would please, state your appearance for

7    the record.

8         **MR. DOREN:**  Good afternoon, Your Honor, Richard Doren

9    for Lexington.

10        **MR. CONVERSE:**  Good afternoon, Your Honor, Bruce

11   Converse for Evanston Insurance Company.

12        **MS. FU:**  Good afternoon, Your Honor, my name is

13   Qianwei Fu from the law firm Zelle LLP, along with my

14   colleagues Shannon O'Malley and Nick Dolejsi.

15        We represent several insured Defendants, Arch, Liberty

16   Mutual, Landmark, Homeland, Endurance, XL Catlin, and the

17   various Underwriters at Lloyd's.

18        **MS. O'MALLEY:**  I also have an associate in my office,

19   Amanda (inaudible).

20        **MS. ANDERSON:**  Good afternoon, Your Honor, this is

21   Jennie Lee Anderson of Andrus Anderson on behalf of Plaintiffs.

22        **MR. BLUMHARDT:**  Good afternoon, Your Honor, Eric

23   Blumhardt on behalf of Hallmark Speciality and Aspen Speciality

24   Insurance Companies.

25        **MR. BURNS:**  Good afternoon, Your Honor, it's Tim Burns

1   and Jeff Bowen and Brian Cawley on behalf of Plaintiffs.

2       With us on a different screen is Ken Abbarno at one of our

3   co-counsel firms.

4       **THE COURT:**  All right.  Does that do it everybody?

5   Good afternoon.  Pleasure to see you all.

6       So let me tell you how I'm analyzing this issue and see

7   whether you can give me a little help.

8       First of all, it seems clear that Wisconsin law does apply

9   to this, the Civil Code Section 1646 and California says the

10  place of performance controls.  And that's in Wisconsin.  There

11  is no class that has been certified here.

12      So then I'm going to Wisconsin law to determine what

13  direct physical loss or damage means.  There are -- these are

14  distinct terms.  Direct excludes an intervening force playing a

15  role in the damage.  Physical means something -- physical is

16  something that is tangible, I think, as opposed to intangible

17  so -- and then there is loss or damage, which are two different

18  concepts.

19      And I think it was the judge in the *Al Johnson's* case who

20  sort of put this together is that there was some sort of

21  physical event causing the loss.  So that's where I am when I'm

22  sort of parsing through these things.

23      Well, let me move on.  The Plaintiffs allege that COVID-19

24  was actually present because individuals with COVID-19 were

25  present on the premises.  And the loss was caused by the

1    closure orders, not the actual exposure.

2        So, the real issue that I have in my motion is whether the

3    imminent threat of future property damage would allow for

4    coverage under the protection and preservation of property

5    provision.  I don't think the other ones would possibly apply.

6        And my issue is what is the physical event?  And I

7    don't -- I don't know that the virus is a physical event and

8    not the -- the Wisconsin law that I have looked at, of course,

9    doesn't answer the question.

10       And the one case that tried to deal with it directly

11   didn't, the *Colavito* case, and I'm not -- there is no analysis

12   there to be followed, one way or another.  So that's where I

13   am.

14       And, Mr. Doren, I will end up starting with you on the

15   physical -- helping me out with Wisconsin law.  I know the

16   law -- I don't know it, but I see that the law seems pretty

17   uniform around the country with respect to this, and the cases

18   that have been decided in a pretty uniform way.

19       I'm dealing with Wisconsin law, and I have -- I want to

20   have some comfort on where I'm going with that.  So I will get

21   there.

22       If I had to get to the motion to strike, I would be

23   inclined to grant it just because it's unclear whether the

24   policies are part of the TPIP.

25       They are not explicitly mentioned in the -- in fact, I

have a feeling that this is a matter that will be -- could be easily resolved in a factual manner, but I don't know how I could, given the dispute, bring those policies in.

But, Mr. Doren, help me out with the -- with Wisconsin law and tell me whether there is anything -- after you have argued this, is there anything more that you think you can add with respect to Wisconsin law and would you appreciate the opportunity to try to do that in a short, completely focused brief on the policy and Wisconsin law?  Go ahead.

**MR. DOREN:**  Thank you, Your Honor, and thank you for the comments helping to sharpen the issues for us.

So as to Wisconsin law and Your Honor's comment about physical and the need for there to be a direct physical loss or damage, I would direct the Court to a case that is cited in our brief, which is the 3303-05 *Marina Road* case.

It is an intermediate appellate court case which says that the common and ordinary meaning of the word "physical" is of or related to natural or material things as opposed to things mental, moral, spiritual, or imaginary.  While the common and ordinary meaning of the word "loss" is the state or fact of being destroyed or placed beyond recovery.

And under that description of the term -- and also as Your Honor has noted courts around the country have been virtually uniform in their analysis of these issues -- the treatment of the words "direct physical loss" has generally

1  been attributable to the destruction or complete dispossession;

2  whereas, "direct physical damage" is -- as the word suggests --

3  some sort of physical damage of something less than a physical

4  loss of the property.

5      And that's consistent with what the case law in Wisconsin

6  teaches.

7      We know too that direct physical loss or damage -- and

8  this is from the Seventh Circuit applying Wisconsin law to the

9  *Advance Cable* case -- this is the hailstorm case speaking in

10 terms of the physically altered surface of the roof after the

11 hailstorm and that did constitute direct physical loss or

12 damage.

13     And then as Your Honor has already noted, *Al Johnson's*

14 which is a well-reasoned trial court case, the Judge in that

15 case notes that there was no physical loss here.

16     It was simply a shutdown.  And then because there is no

17 physical loss alleged and no physical damage, the motion to

18 dismiss was granted.

19     And here, in Wisconsin and as have each court in the

20 Northern District of California to address this question of the

21 presence of the virus on the insured property, none have found

22 that the presence of a virus on the property is, in fact,

23 direct physical loss or damage.

24     Magistrate Judge Hixson in a couple of decisions has

25 explicitly noted that the fact that it can be disinfected and

1   simply wiped off the surface kind of defeats the point or the

2   argument that this is some sort of actual repair of a direct

3   physical loss or damage.

4          And I would refer the Court to paragraph 147 of the

5   complaint where Plaintiffs allege that the repairs that they

6   had -- the repairs, if you will, that they have made include

7   the installation of physical barriers presumably to keep human

8   beings from breathing on each other and increasing the cleaning

9   and sanitizing.

10         And in that same paragraph, the statement is made that

11  with that, the Plaintiffs are able to continue their operations

12  and avoid imminent threat of property damage through that

13  increased cleaning and sanitization.

14         And so the allegations in the complaint acknowledge that

15  despite kind of the broader and more conclusory allegations,

16  that this does not constitute the sort of physical injury or

17  damage that Wisconsin law requires of -- for business

18  interruption coverage to apply.

19         And, of course, Your Honor has also seen our reference to

20  the *Wisconsin Label Corporation* case, which was out of the

21  Wisconsin Supreme Court where they are dealing with mislabeled

22  goods.  And the fact of the matter is those products did not

23  have the proper label on them, and there were consequences to

24  that.

25         But the Court noted there that there is no physical damage

1    as a result because both the label and the product were fine.

2    They just -- one simply didn't match with the other.

3        And so what one needs, as the Wisconsin Supreme Court

4    said, is, you know, there would need to be actual physical

5    damage before you could have a direct physical -- before you

6    could have direct physical damage.

7        It means what common sense tells us.  It is completely

8    consistent with what the eight decisions in the Northern

9    District of California have concluded in evaluating whether the

10   presence of the virus constitutes direct physical loss or

11   damage.

12       And, again, as to loss similarly here, there has -- other

13   than economic loss, which Plaintiffs have plainly alleged, the

14   direct physical loss as a result of any sort of presence a

15   virus has not been alleged as defined under the law.

16       And if I may, Your Honor, I would also just like to take

17   one moment to discuss the allegations in the complaint because

18   I think they too are enlightening in terms of the nature of the

19   allegations related to the presence of the virus.

20           **THE COURT:**  Before you do that, the -- do you know

21   whether the *Al Johnson's* case has been appealed?

22           **MR. DOREN:**  I don't, Your Honor.  I don't, as I sit

23   here.

24           **THE COURT:**  Okay.  Go ahead.

25           **MR. DOREN:**  Thank you, Your Honor.

1      The allegations in the first 15 or 20 paragraphs in the

2  complaint that refer to the presence of the virus do so in very

3  conclusory terms just kind of referring specifically, as I just

4  said, to the presence of the virus; but there is no -- there is

5  no specificity as to the when, the where, the how, the why, the

6  impact of the presence, the manifestation, if you will, of that

7  presence.

8      And I would suggest, Your Honor, that that is because the

9  Plaintiffs prove later in the complaint that they are actually

10 unable to plead that.  They do not have any facts with which to

11 plausibly allege the presence of the virus on the premises.

12     If you look at paragraph 138 of the complaint, they talk

13 about an overwhelming likelihood of the physical presence of

14 the virus; and they base that on the number of confirmed cases

15 on the reservation and in Wisconsin throughout the year as

16 opposed to anything specific to the premises.

17     At paragraph 139 they allege that over the course of 2020,

18 42 employees or Plaintiffs tested positive and 120 citizens of

19 the county -- residents of the county were -- had reported

20 cases in September 2020.

21     That would be the opportunity to allege that any of those

22 people had been on the premises or that there had been any

23 consequences to the insured property as a result of that, but

24 there are no such allegations.

25     In fact, the only allegation in that same paragraph is

1   that given the fact that all these people had it, it seems

2   unavoidable that they must have entered the insured property;

3   but they are unable to specify -- to specifically plead that

4   that did occur.

5       At paragraph 148 it is alleged that given the employees,

6   visitors, and patrons entering Plaintiffs' properties and the

7   number of cases confirmed in the State and on the reservation,

8   it is statistically certain that the virus has been present for

9   some period of time.

10       Again, that is -- that is a conclusory and speculative

11   allegation that is insufficient to give rise to a plausible

12   claim for the presence of the -- of the virus on the premises.

13       And, of course, there will only be coverage if as a result

14   of the direct physical loss or damage -- let me rephrase --

15   that the direct physical loss or damage causes the loss for

16   which business interruption is requested.

17       And I would direct the Court to paragraphs 131 to 137 of

18   the complaint which talks about the closure orders.

19       And in paragraph 101, it is alleged that the threat and

20   presence of COVID-19 has caused civil authorities throughout

21   the country to issue orders requiring the whole or partial

22   suspension of business at a wide range of establishments

23   including civil authorities with jurisdiction over Plaintiffs

24   businesses.

25       These orders have directly impacted Plaintiffs' business.

1    And the next 37 paragraphs go through and in great detail,

2    great specific factual detail, the orders, the nature of them,

3    and the nature of the response by the Plaintiffs to each order

4    in terms of closures, in terms of partial operations, and in

5    terms of the impact caused by those orders.

6        That's the kind of specificity.  Those are the kinds of

7    facts that need to be alleged regarding, first of all, the

8    presence of the virus on the premises and, second of all, the

9    impact or the result of the presence of that virus on the

10   premises.

11       And those simply don't exist anywhere in the complaint

12   because those facts don't exist to allege, and this is -- first

13   of all, the first amended complaint.  And if those facts were

14   there, we know they would be alleged.

15       **THE COURT:**  Mr. Doren, I'm not sure that that

16   argument, the latter argument about damage, works with respect

17   to protection and preservation of the property provision, which

18   is the imminent threat of future property damage.

19       So that was a distinction anyway that I was making as I

20   was analyzing the claims.

21       And the second thing, I assume that you are not suggesting

22   that that amendment with respect to being in the premises cures

23   the general problem that I was addressing.

24       **MR. DOREN:**  Let me be clear, Your Honor, I don't mean

25   to suggest that amendment should be invited.  My point is more

1   fundamental; that at this point after -- you know, obviously

2   giving great thought and putting significant effort into this

3   complaint, we have before us the best we can do.

4        Now, in terms of preservation of property -- and, first of

5   all, to contextualize that -- we can all understand the concept

6   of, for example, in approaching a hurricane and people going

7   out to put plywood over their windows, for example, because

8   broken windows caused by a hurricane would plainly be a direct

9   physical loss or damage.  And so taking steps to preserve that

10  property makes sense.

11       Now here, the complaint suggests -- now, of course,

12  Your Honor has asked about, you know, the physical event that

13  would be imminent under the protection and presentation of the

14  property provision.

15       And, of course, the complaint -- the thrust of the

16  complaint is that that physical complaint would be that

17  COVID-19 contamination of the premises.

18            THE COURT:  It just flips back to the argument that --

19            MR. DOREN:  That's right.

20            THE COURT:  -- that you were discussing before.  I get

21  that.

22            MR. DOREN:  It does, Your Honor.  I won't say

23  circular.  We have been talking about pleadings for the last

24  five minutes.  That takes us back to the fundamental issue.

25       And I will just conclude with this -- although I'm happy

1  to answer any other questions or hit any other points that I

2  have missed -- but in our briefs we -- and in our recent

3  submission of supplemental authority, we have offered the Court

4  well over 50 decisions that have addressed this question of

5  whether or not the presence of the COVID-19 virus on a

6  premises -- on insured property is direct physical loss or

7  damage.  And that includes, of course, the *Al Johnson's* case.

8  And in each of those cases the conclusion was that it did not.

9        And the couple of cases that have, you know, permitted

10  cases to proceed to discovery, I'm happy to discuss those; but

11  those are -- those were generally early and generally outliers;

12  and the vast weight of authority, both in the Northern District

13  of California and nationally, is plain.

14        There is no direct physical loss or damage under that fact

15  pattern.

16        **THE COURT:**  Okay.  Thank you, Mr. Doren.  Let me

17  hear -- who is going to argue for the Plaintiffs?

18        **MR. BURNS:**  I will, Your Honor, Tim Burns at Burns

19  Bowen & Bair.

20        **THE COURT:**  Okay.

21        **MR. BURNS:**  Thank you, Your Honor.  Let me just start

22  with this:  One of the things the Court mentioned, this is not

23  a closure order case.  It was not pled as a closure order case.

24        We had read in Judge Tigar's decision in *Mudpie*.  We had

25  your decision in *Water Sports Kauai*.

1    When we filed in state court, we were fairly confident we

2    were going to be removed to the federal district court under

3    CAFA.  We carefully pled this case especially in the amended

4    complaint as a presence case, not to invoke some magical word,

5    Your Honor; but the fact is coronavirus was present at the

6    reservation.

7    It was one of the hardest hit places in Wisconsin.  When

8    people went into the casino, they spread the virus; and the

9    casino was closed as a result.  Then it reopened with people

10    coming in and the virus being spread.

11    It is simply not the case that this is a closure order

12    case.  We pled it as a present case because we had read *Mudpie*

13    and we had read *Water Sports Kauai*.

14    So that's point number one.  And I will just read from

15    your complaint, Your Honor, paragraph 143.

16    **THE COURT:**  Mr. Burns, what I'm interested in is

17    having you really focus me on Wisconsin law and really what

18    "physical" means in this context.  How am I going to get from

19    the virus to a physical loss or damage?

20    **MR. BURNS:**  Certainly, Your Honor, and I will mention

21    a number of cases.

22    But let me start with the very well-reasoned decision of

23    Judge Chang in the *Society* case.  That is the multi-district

24    litigation.  Judge Chang is appointed by the JPML.

25    And just for full candor, Your Honor, on my team here, are

1   Plaintiffs' co-leads in the society multi-district litigation.

2        Judge Chang decided on motions to dismiss and a motion for

3   summary judgment under Wisconsin law.

4        He said, of course, it is physical under all the laws he

5   was examining.  And the example that he gave, Your Honor -- and

6   I think this is very important -- it isn't just a money loss.

7   People can't use their space.

8        A restaurant, for instance, if it is restricted on how

9   many people can come into the restaurant, that's a physical

10  restriction, not some intangible restriction.

11       And the way he explained that was:  Look, if you ask how

12  can the restaurant repair this?  How can it remedy this?

13       The way it can repair or remedy it is by increasing their

14  space.  It is very much a physical issue.

15       So that's *Society*, Judge.  And I want to note, Judge,

16  because there has been lots of the snowball effect that the

17  issuers have created with what I call a bunch of virus

18  exclusion cases that were decided in ways that I don't think

19  are correct but set the law for any avalanche of decisions in

20  the insurance paper.

21       But keep in mind, Judge, there have been 300 decisions; 50

22  of those decisions have gone the way of the policyholders, not

23  the way of the insurers.

24       And let me make this point to you, Judge:  It is no

25  happenstance, in my view, that some of the top judges in the

1  country have gone the way of the policyholders.

2      Judge Chang in the Northern District of Illinois who is

3  handling the MDL; Judge Polster, who you probably know, Judge

4  Orrick, is handling the opioid MDL.

5      These are judges with the federal judiciary who place our

6  trust in handling these massive cases, and those judges are

7  saying:  Let's pause here.  There is more here than meets the

8  eye.

9      So *Society*, Wisconsin law in part, and physical was met,

10  not even by the presence in that case, Your Honor.  We had

11  alleged presence, but he said the closure orders were

12  sufficient under Wisconsin law to constitute direct physical

13  loss or damage.

14      Next, the *Manpower* case, Your Honor, Judge Lynn Adelman, a

15  close personal friend, one of my favorite judges in the world,

16  when I ran for Supreme Court in the State, my view of Judge was

17  Lynn Adelman in the *Manpower* case, no requirement of structural

18  alteration.

19      If you look closely at the *Advance Cable* case in the

20  Seventh Circuit, a case mentioned in their papers, that is

21  usually a case we cite in our papers.  I just cited it on

22  appeal to the Seventh Circuit.

23      It is a case where -- it was a hailstorm case, Your Honor.

24  And the insurance company comes in and says:  Well, it is just

25  cosmetic injury.  There is no loss of function so no physical

1    loss or damage.  They blasted whatever argument works in this

2    situation, like good lawyers in fairness to them.

3        But the Seventh Circuit said this:  It doesn't matter if

4    it is a loss of function.  It doesn't matter if it is a

5    cosmetic injury.

6        Physical loss or damage assumes -- includes not just loss

7    of function or cosmetic injury.  It includes any type of

8    tangible injury.

9        In their papers under California and Wisconsin law, they

10   talk about a distinct demonstrable physical injury, language

11   that I believe came from either the Amnon case in California or

12   the *Inner Mogul* case.

13       **THE COURT:**  That happened in *Advance Cable*.  There was

14   damage to the roof that -- it may not have been monetary

15   damage, but there was a physical impact on that roof.

16       And what I'm trying -- what I'm hoping to get to is what

17   the physical impact is here that I should be looking at.

18   That's what I really care about.

19       **MR. BURNS:**  The physical impact in a number of ways.

20   One, it is a cured loss of function of these places.

21       Think about a casino, Your Honor.  In a casino on a

22   reservation, you may have a hundred thousand square feet of

23   usable space before COVID-19 comes along.

24       Once COVID-19 comes along and it affects the property and

25   is there as long as people congregate, you are going to spread

1  people even more than 6 feet apart in the casino.  You are

2  going to greatly reduce your usable space.

3      So there is a loss of functionality and of diminishment of

4  physical space.  That's number one.

5      Number 2 -- and this is her complaint.  This is what gets

6  me about this being to you as a closure order instead of the

7  presence.  We actually allege structural alteration after

8  talking with their experts.

9      COVID-19 gets on the premises.  It actually turns into

10  termites, things on the surface of property and structurally

11  alters those surfaces.  It structurally alters the air.

12      These are things that we -- that we plan to prove with

13  expert testimony.  The jury may buy it.  The jury may not buy

14  it.  I suspect they will buy it, but that's a jury question.

15  We have pled it in this case.

16      I want to now answer one of the questions which leads to a

17  different question.  The Court had asked whether the *Al*

18  *Johnson's* case had been appealed.  And the answer is no.

19      I understand from the lawyer who is handling the *Al*

20  *Johnson's* case -- not one of our cases but his client is -- has

21  decided not to appeal.

22      Judge, if you have been to Door County, Wisconsin, the

23  vacation spot of our State, it is the place with goats on the

24  roof of the restaurant.

25          **THE COURT:**  I know Door County.

1          **MR. BURNS:**  So the -- I lost my train of thought.

2     The *Al Johnson's* case hasn't been appealed.  There are

3     three or four cases working their way through the Wisconsin

4     appellate court system.

5     The insurers actually took three losses in the state.  A

6     couple others sought leave to appeal to the Supreme Court.  I

7     don't think that worked, but they are working their way into

8     the appellate court system in Wisconsin.

9     I think, you know, we have a number of cases that

10    potentially invoke Wisconsin law that will find their way to

11    the Seventh Circuit soon.

12    But I want to make this point, Your Honor, these aren't

13    loss of uses cases -- loss of function and loss of use case

14    that are the type of case that are usually appealed.

15    We are alleging presence here, not -- and that the

16    presence has actual physical injury, actual structural

17    alteration.

18    I'm a bit of a loaner.  So I wanted to talk with the Court

19    a bit about whether Wisconsin law applies here.  And let me

20    start with this proposition:  I think Wisconsin law is

21    basically the same law as California in terms of when you think

22    about law, you think about rules of the interpretation of a

23    contract as opposed to individual contract issues under very

24    different circumstances.

25    I don't think either party is suggesting that there are

1    differences between Wisconsin law that would affect the

2    outcome.  That's why I focus so much on the *Mudpie* and the

3    *Water Sports Kauai* cases in our brief because we were intent on

4    showing presence here.

5        The fact is if we had to do more to show presence in terms

6    of exact dates, exact places on the property, exact people

7    being healed, we would get affidavits and do it.

8        But are we really going back to the Commonwealth forms of

9    action?  Are we really going back to co-pleading?

10       I know that notice pleading has taken a number of hits in

11   the last 20 years, but it hasn't taken that big of a hit that I

12   can't -- that I can allege in a 54-page complaint with a 162

13   factual paragraphs that COVID-19 was present on the property,

14   in fact, 42 employees were ill with it, and that injury -- that

15   physical presence caused physical injury of altering the

16   structure property and diminishing the use of functional space.

17       And so, Judge, can I just -- look, this case is so

18   important to my client but also so important to the many native

19   American tribes out there.

20       I'd like the Court's indulgence to -- I have literally --

21   and these aren't word heavy -- I have a 13-page PowerPoint

22   about the roadmap in *Mudpie* and the *Water Sports Kauai* and how

23   we pled everything.

24           **THE COURT:**  You know, I don't think that will help me

25   because I know *Mudpie* and I know what I was thinking in *Water*

1    *Sports*, which was that I didn't want to -- that this was an

2    interesting issue, but I didn't want to have to deal with it in

3    that case and I didn't have to.

4         And so now I have to deal with it and I'm looking at it.

5    And I think that you -- I understand the argument that you are

6    making, and it is going to force me to go back into the

7    complaint and take a look at presence.

8         But why don't you -- if there is something new that you

9    have to say that you think is critical, tell me that.

10        Otherwise, I'm going to turn it back to Mr. Doren for a

11   brief rebuttal.  And then we are going to call it a day.

12        **MR. BURNS:**  Let me just make sure I'm not missing

13   anything here, Your Honor, if you will indulge me.

14        **THE COURT:**  Sure.

15                  (Pause in the proceedings.)

16        **MR. BURNS:**  I believe our response brief lays out a

17   number of these issues.  I'm trying not to repeat it, but it

18   lays it out pretty well.  I think it lays it out pretty well,

19   and I would encourage -- it is not a *Mudpie* case.  *Mudpie* was

20   pled to avoid a virus exclusion.

21        So the -- the Plaintiffs pled closure orders as the powers

22   of loss hoping for that to get around the virus exclusion.

23   *Water Sports Kauai*, I love the folks at Lieff Cabraser.  I'm

24   not sure why they pled their case as a closure order case

25   because my view is it could have been a physical presence case.

1    We have ample facts to show physical presence.  We have

2    hired some of the best experts in the country to show it

3    because we have a number of these cases going on.

4        And thank you, Your Honor, for the opportunity to present

5    here.  I only regret that I'm not able to be in San Francisco

6    to present in person.

7            THE COURT:  I regret that as well.  And I will say the

8    one thing that I completely endorse in your argument was your

9    praise for Judge Adelman, who I think is an outstanding human

10   being and jurist.

11           MR. BURNS:  He is just a dear, dear man, the greatest

12   of Wisconsinites.

13           THE COURT:  Mr. Doren.

14           MR. DOREN:  Thank you, Your Honor.  I will be brief.

15       First of all, *In Re: Society Insurance Company* that, in

16   security -- or *Society*, rather, the Court held that the

17   inability to use property constitutes a direct physical loss.

18   In other words, that was a loss of use case.

19       And, you know, frankly, the Court purported to apply

20   Wisconsin law but did not analyze any of the cases we have

21   talked about here today including *Advance Cable*.

22       The Court reasoned that the loss of use was physical

23   because Plaintiffs were limited from using their physical

24   space.  There is no Wisconsin authority to support that

25   proposition, and it is contrary to Wisconsin law.  And to the

1  extent Counsel is correct, Wisconsin and California law are
2  similar, it has no place in current California jurisprudence
3  either.

4      In terms of the *Manpower* case, at page 4 of the Westlaw
5  slip opinion, I will just read this to give us the sense of the
6  *Manpower* case.

7      The evidence establishes that the collapse rendered the
8  entire 2001 and 2003 building structure unstable at least for a
9  period of 8 to 10 weeks.  The insurers own engineering expert
10 opines that it would have taken at least that long to complete
11 certain temporary strutting and propping works, which would
12 have been required to ensure the stability of the building,
13 both damaged and undamaged sections, and to re-establish safe
14 means of access and egress of the undamaged areas.

15     Here there had been a partial collapse of the building,
16 I believe, towards the parking structure; and the question was
17 whether or not that had impact to cause direct physical loss or
18 damage to the remaining portions of the building.

19     And the conclusion was that it had because the entire
20 building was now unstable.  Obviously that is a much different
21 scenario than what we are dealing with here.

22     Counsel also spoke about the fact that there had been
23 restrictions of use on their property.  Of course, the
24 description was that the restrictions of use or what was done
25 by Plaintiffs in response to closure orders, and so those were

1  restrictions imposed by the Plaintiffs themselves, not by any

2  sort of direct physical loss or damage that required repair,

3  rebuilding or replacing.

4      And then lastly, Your Honor, again, Counsel has noted that

5  California law and Wisconsin law on this specific issue are

6  basically the same.

7      And eight different -- and in eight different decisions

8  the Northern District of California applying California law has

9  held that the presence of the virus on an insured property does

10  not constitute direct physical loss or damage to those insured

11  premises.

12      And then given the Court's familiarity with *Mudpie* and

13  *Water Sports*, I will let those go.  Thank you.

14      **THE COURT:**  All right.  Thank you all for your

15  argument.  And I think there is really -- I'm sure that there

16  are lawyers who would like to argue the motion to strike, but

17  that seems like an obvious pleading motion, which I have

18  indicated what I'm going to do on; and I don't think argument

19  will be helpful to me in that regard.

20      So, what will be helpful to me is spending a little bit

21  more time looking at the complaint and trying to sort this

22  through.

23      There were times while I was looking at this that I

24  wondered:  Well, should I go refer this to the Wisconsin

25  Supreme Court?  Should I ask for more briefing?

1     I have a feeling I have gotten everything that I need.

2   So, I will plow ahead and get an order out as soon as I can.

3     I don't think it makes sense to have a case management

4   session until I know what case I'm dealing with, so I will say

5   something about that in the order when it comes out.

6     So thank you-all very much for being here.  Thank you for

7   your argument, which was very good.  And I will do my best to

8   get an order to you some time soon.

9        **MR. DOREN:**  Thank you, Your Honor.

10       **MR. BURNS:**  Thank you, Your Honor.

11            (Proceedings adjourned at 2:59 p.m.)

12                  ---oOo---

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          **CERTIFICATE OF REPORTER**

4              We certify that the foregoing is a correct transcript

5       from the record of proceedings in the above-entitled matter.

6

7       DATE:    Monday, November 15, 2021

8

9

10

11       _____

12              Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25